# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| JAMES RONALD LOWE, § | |
|     PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:19-CV-53-A |
| § | |
| ANDREW SAUL, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT. § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.   STATEMENT OF THE CASE

*Pro-se* plaintiff James Ronald Lowe ("Lowe") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). On October 8, 2015, Lowe protectively applied for DIB, alleging his disability began on November 29, 2014. (Transcript ("Tr.") 15, 152–55.) After his application was denied initially and on reconsideration, Lowe requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 15, 97–109.) The ALJ held a hearing on August 21, 2017 and issued an unfavorable decision on January 3, 2018.

(Tr. 12–34, 41–75.)  Thereafter, on November 17, 2018, the Appeals Council denied Lowe's request for review, leaving the ALJ's decision as the final decision of the Commissioner.  (Tr. 1–4.)  Lowe subsequently filed this civil action seeking review of the ALJ's decision.

## I.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq*., of the SSA and numerous regulatory provisions.  *See* 20 C.F.R. Pt. 404.  Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI."  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. § 404.1520.  First, the claimant must not be presently working at any substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  *See* 20 C.F.R. § 404.1572.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404. Subpt. P, App. 1. 20 C.F.R. § 404.1520(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status

alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* § 404.1520(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* But if the Commissioner meets this burden, it is up to the claimant to then show that he cannot perform the alternate work suggested. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

     A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F. 3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record

to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In his brief, Lowe presents the following three issues:

(1) Whether the ALJ erred in finding that Lowe was not eligible for social security disability benefits;

(2) Whether the ALJ erred in not finding that his medical conditions were severe enough; and

(3) Whether the ALJ erred in finding at Step Five that he could perform work at a secretarial type position.

(Plaintiff's Brief ("Pl.'s Br.") at 1–4.) Lowe, in support of his arguments, attached two exhibits to his brief and sixteen exhibits to his reply.

### IV. ALJ DECISION

In his January 3, 2018 decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 15–34.) The ALJ first noted that Lowe met the disability insured status requirements under Title II of the SSA through June 30, 2018. (Tr. 18.) The ALJ then stated that Lowe had not engaged in any substantial gainful activity since November 29, 2014, the alleged onset date. (*Id.*) The ALJ further found that Lowe had the following "severe" impairments: "Lumbar disc bulges with radiculopathy, Cervical disc bulges with radiculopathy, Right shoulder supraspinatus tendinopathy and Acromioclavicular joint arthropathy with chondromalacia of the humeral head and glenoid with synovitis." (Tr. 18.)

Next, the ALJ held that none of Lowe's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 20–21.) As to Lowe's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity as follows. The claimant can: lift and/or carry 10 pounds on occasion and less than 10 pounds frequently; sit for six hours out of an eight hour day; walk or stand for six hours out of an eight hour day; push/pull unlimited except for the lift/carry restrictions; occasionally use the right upper extremity to reach overhead and to the side, frequently: kneel and crawl; occasionally: climb ramps/stairs, balance, stoop, and crouch; and never: climb ladders/ropes and scaffolds. In addition, the claimant should avoid concentrated exposure to: extreme cold, vibration, and dangerous machinery and heights.

(Tr. 21 (emphasis omitted).) Next, the ALJ opined that Lowe was unable to perform any of his past relevant work. (Tr. 32.) Relying on the testimony of a vocational expert ("VE"), the ALJ, however, found that there were jobs that existed in significant numbers in the national economy that Lowe could perform. (Tr. 33–34.) Consequently, the ALJ determined that Lowe was not disabled. (Tr. 34.)

## V.   DISCUSSION

### A. <u>Substantial Evidence</u>

In his brief, Lowe appears to argue generally that the ALJ's disability determination is not supported by substantial evidence because his "condition has been ongoing and getting worse for almost 5 years now." (Pl.'s Br. at 3.) In support of his argument, Lowe attached the following two exhibits to his brief: (1) an MRI report of the lumbar spine without contrast dated August 2, 2019 that indicates: (a) mild lumbar spondylosis resulting in mild neuroforaminal stenoses at L2-L3, L3-L4, and L4-L5 and (b) "[v]ery subtle anterior endplate edema at T12-L1, L2-L3 and L3-L4, likely acute on chronic degenerative and/or mild enthesopathy" ("MRI lumbar spine report")

5

(Pl.'s Br. at Exhibit ("Ex.") 1–2; and (2) part of a Psychological Consultative Examination Report dated May 15, 2019 in which Peggy Auguste, PsyD, diagnosed Lowe with generalized anxiety with panic attacks and moderate, recurrent major depressive disorder and opined that Lowe's "symptoms of depression and anxiety are impairing his capacity to establish and maintain gainful employment." (Pl.'s Br. at Ex. 3–4.) In addition, Lowe attached sixteen exhibits to his reply brief filed on January 15, 2020.

Based upon Lowe's submission of additional evidence to the Court, the issue becomes whether such documents constitute "new and material evidence" that require the Court to remand this case. "When new evidence becomes available after the Secretary's decision and there is reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing 42 U.S.C. § 405(g)); *Latham v. Shalala*, 36 F.3d 483, 483 (5th Cir. 1994)). The Court does not issue factual findings on new medical evidence but is to determine whether to remand for the consideration of newly presented evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). "To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings." *Ripley*, 67 F.3d at 555. To be new, evidence must not be merely cumulative of the evidence already in the administrative record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). For evidence to be material, it must relate to the time period for which disability benefits were denied and there must be a reasonable probability that the new evidence would change the outcome of the Commissioner's decision. *Ripley*, 67 F.3d at 555; *see Sullivan*, 884 F.2d at 803.

6

As to the August 2, 2019 MRI lumbar spine report, the Court notes that it notes only "mild" lumbar spondylosis and "very subtle" endplate edema. (Pl.'s Br. at Ex. 1–2.) Consequently, it is questionable whether such evidence is new and not merely cumulative of other evidence in the record. *Pierre,* 884 F.2d at 803 ("In order to justify a remand, the evidence must first be 'new', and not merely cumulative of what is already in the record."). The ALJ, in his decision, found that Lowe had the severe impairments of, *inter alia*, lumbar disc bulges with radiculopathy and cervical disc bulges with radiculopathy. (Tr. 18.) The ALJ was aware of Lowe's daily back pain and reviewed multiple MRIs, treatment notes, and doctor's opinions relating to Lowe's back issues. (Tr. 18–32.) Moreover, even assuming the MRI lumbar spine report is new, such evidence is not material as there is no reasonable probability that such evidence would change the outcome of the Commissioner's decision. Evidence showing degeneration of a claimant's condition after the expiration of this Title II insured status, which in this case was June 30, 2018, is generally not relevant to the Commissioner's Title II disability analysis. *See McLendon v. Barnhart*, 184 F. App's 430, 431 (5th Cir. 2006); *see Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995) ("If a claimant has a degenerative ongoing impairment, the relevant inquiry is whether the claimant was actually disabled during the relevant time, not whether a disease existed that ultimately progressed to a disabling condition.").

As to the Psychological Consultative Examination Report dated May 15, 2019, the Court finds that such report is not new as to Lowe's impairment of anxiety and not material as to both his impairments of anxiety and depression. To begin with, the ALJ specifically considered Lowe's anxiety and found that it was a nonsevere impairment. (Tr. 18–19.) Consequently, the Psychological Consultative Examination Report is cumulative of other information in the record

7

relating to Lowe's anxiety. While this report indicates a new diagnosis of depression, the "mere presence or diagnosis of some impairment is not disabling per se." *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("Plaintiff must show that she was so functionally impaired by her [impairment] that she was precluded from engaging in any substantial gainful activity."). Moreover, as stated above, evidence showing a degeneration of a claimant's condition after the expiration of his Title II insured status, which in this case was June 30, 2018, is generally not relevant to the Commissioner's Title II disability analysis. *McLendon*, 184 F. App'x at 431; *see Torres*, 48 F.3d at 894 n.2. While retrospective medical diagnoses may constitute relevant evidence of pre-expiration disability and "properly corroborated retrospective diagnoses can be used to establish disability onset dates," there is nothing in the May 15, 2019 Psychological Consultative Examination Report linking his recent depression diagnosis to a time period on or before June 30, 2018, the last date he met the insured status requirements of the SSA. *McLendon*, 184 Fed. App'x at 431; *see Likes v. Callahan*, 112 F.3d 189, 190–91 (5th Cir. 1997). Because the evidence submitted by Lowe with his brief is either not new and/or is not material, remand is not required.

As to the sixteen exhibits Lowe attached to his reply brief, the Court notes that, in general, a movant may not submit, and the Court will not consider, new evidence with a reply brief. *Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 103 (N.D. Tex. 2001).[1] The purpose of

---

[1] Even though the Court is not considering the evidence submitted by Lowe in his reply brief, the Court notes that the majority of such evidence is in the transcript and was considered by the ALJ in his decision. (Plaintiff's Reply Brief ("Pl.'s Reply") at Ex. 1, while not contained in the transcript, this exhibit is a note written after an examination that is contained in the record at Tr. 259; Pl.'s Ex 3 is at Tr. 264–65; Pl.'s Ex. 4 is at Tr. 262–63; Pl.'s Ex. 5 is at Tr. 258; Pl.'s Ex. 6 is at Tr. 312–14; Pl.'s Ex. 9 is at Tr. 317; Pl.'s Ex. 10 is at Tr. 315–16 and Tr. 334-35; Pl.'s Ex. 12 is at Tr. 422–23; Pl.'s Ex. 13 is at Tr. 411–12.)

a reply brief is to "rebut the nonmovant's response, thereby persuading the court that the movant is entitled to the relief requested in the motion." *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239–40 (N.D. Tex. 1991). The reply brief is not an opportunity to submit evidence or make arguments not previously raised in the opening brief. *See Walker v. Apfel*, 180 F.3d 261 (5th Cir. 1999); *Greene v. Toyota Motor Corp.*, 3:11-CV-207-N, 2014 WL 12575962, at *1 (N.D. Tex. May 7, 2014) ("A movant may not submit, and the Court will not consider, new evidence with a reply brief.")  Consequently, the Court will not consider the sixteen exhibits Lowe attached to his reply brief.

### B. Severe Impairments

In his brief, Lowe also argues that the ALJ erred in finding that his "medical conditions are not severe enough." (Pl.'s Br. at 1.)  Although not entirely clear, Lowe appears to be arguing that he does not understand how he can be denied social security disability when he has impairments that prevent him from working.  Specifically, Lowe argues that he meets sections 1.04, 12.04 and 12.06 of the Listing.  (Pl.'s Br. at 1–3.)

To obtain a disability determination at Step Three, a claimant must show that his impairments meet or equal one of the impairments in the Listing.  20 C.F.R. § 404.1520(a)(4)(iii). As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion, because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner.  SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996).  When determining

whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the record about the impairments, including findings from one or more medical or psychological consultants designated by the Commissioner. 20 C.F.R. § 404.1526(c).[2] Medical equivalence is found when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

The claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 531, *superseded by statute on other grounds as stated in McCloskey v. Colvin*, No. CV 15-5223-SP, 2016 WL 5745077 at *7 (D. Cal. Sept. 30, 2016); *Selders v. Sullivan*, 914 F.2d 614, 619. "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619–20.

"Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-cv-95-O, 2010 WL 2473835, at *9 (N.D. Tex. May 13, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). "However, before the absence of reasons for adverse findings requires rejection of the unfavorable decision, a court must determine whether the error was

---

[2] Relevant evidence does not include the claimant's vocational factors of age, education, and work experience. 20 C.F.R. § 404.1526(c).

harmless." *Id.*; *see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

As to section 1.04 of the listing,[3] the ALJ specifically reviewed this section, finding as follows:

> The claimant's impairments, singly or in combination, do not meet or medically equal any of the listings in 20 CFR Part 404, Subpart P, Appendix 1. Particular consideration has been given to listings 1.02 (Major dysfunction of a joint(s) (due to any cause)) and 1.04 (Disorders of the spine).

---

[3] Section 1.04 of the Listing states:

1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

    A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

    B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

    C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04.

11

> However, the record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet the criteria of any listed impairment and the preponderance of the evidence does not show that the claimant's impairment(s) medically equal any listed impairment(s).
>
> . . . .
>
> He does not have spinal arachnoiditis.
>
> With respect to listing 1.04A for the disorder of the spine to meet listing 1.04A at step three in the sequential evaluation process, the claimant must establish the simultaneous presence of all the medical criteria in paragraph A. Once this level of severity is established, the claimant must also show that this level of severity continued, or is expected to continue. for a continuous period of at least 12 months.
>
> However, here, with regard to the back, despite involvement of the lower back, he does not have positive straight leg raising noted positive in the supine and sitting positions. Other findings also failed to show that he had the simultaneous presence of all the medical criteria in paragraph A with evidence of that level of severity continued, or was expected to continue, for a continuous period of at least 12 months.
>
> Further, here with regard to the cervical spine, there was no abnormal signal seen in the spinal cord. He also does not have motor loss (atrophy with associated muscle weakness or muscle) in the upper extremities expected to continue for a continuous period of 12 months. Rather, post-labral repair, there was mild atrophy, but there was no weakness in extremities.

(Tr. 20–21 (citations omitted).)

Lowe claims in his brief that his newly submitted MRI lumbar spine report shows that his condition "has gotten worse" and that "page 20 number 4, paragraph 5 [of the ALJ decision] states [he] ha[s] spinal arachnoiditis, as far as 1.04A I have all of the listed criteria. (Pl.'s Br. at 1-2.) However, a review of page 20 of the ALJ decision actually indicates the ALJ stated, "He does **not** have spinal arachnoiditis." (Tr. 20 (emphasis added).) Moreover, the MRI lumbar spine report, which is dated August 2, 2019, does not, on its own, indicate that Lowe met the section 1.04 of the

12

Listing as of June 30, 2018, the date his insured status expired. As set forth above, the ALJ thoroughly analyzed whether Lowe met section 1.04 of the Listing. Based upon the findings by the ALJ, which are supported by substantial evidence in the record, the Court concludes that Lowe has failed to meet the diagnostic criteria of section 1.04 of the Listing. Consequently, the ALJ did not err in finding that the Plaintiff failed to meet the criteria of section 1.04 of the Listing, and remand is not required.

As to sections 12.04 ( Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders) of the Listings, the ALJ did not specifically consider such sections as he found Lowe's impairments of anxiety and insomnia as nonsevere. (Tr. 18.) Moreover, the mere diagnosis or treatment of an impairment does not make it "severe." *See, e.g.*, *Martinez v. Astrue*, No. 4:10-CV-883-Y, 2011 WL 3930219, at *8 (N.D. Tex. Aug. 18, 2011) ("[T]he mere diagnosis of a mental impairment such as depression 'says nothing about the severity of the condition.'") (quoting *Parra v. Astrue*, No. 4:07-CV-443-Y, 2009 WL 49999, at *5 (N.D. Tex. Dec. 3, 2008)). Contrary to Lowe's claims, Lowe has failed to point to any record before the ALJ or in the newly submitted Psychological Consultative Examination Report that indicates his alleged impairments of anxiety or depression were in any way interfering with his ability to work on or before June 30, 2018. Consequently, the ALJ did not err and remand is not required.

### C. Step Five

Lowe also argues that the ALJ erred at Step Five in finding three sedentary jobs that existed in significant numbers in the national economy that Lowe could perform because "[t]hese jobs have not been updated in quite some time and require certain levels of schooling and training." (Pl.'s Br. at 2.) Lowe further states:

> I am a 37-year-old male with an 11th grade education and my previous jobs were manual labor. I cannot sit, stand, kneel, bend, stoop, push or reach for long, nor can I lift much. I have always worked manual labor jobs that required heavy lifting, bending, stooping, kneeling, twisting and so on[.] I cannot sit for long so a sedentary position is not in my ability due to my impairment.

(Pl.'s Br. at 2.)

When, as here, the Commissioner decides at step five that there are other jobs in existence in significant numbers in the national economy that the claimant can perform, that decision must be supported by substantial evidence. *Allsbury v. Barnhart*, 460 F. Supp. 2d 717, 721 (E.D. Tex. 2006). To make this determination an ALJ considers relevant vocational factors, including a claimant's age. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1563(a); *Stout v. Astrue*, No. 10–4466, 2012 WL 1020179, at *3 (E.D. La. Feb. 22, 2012). Typically, the Commissioner satisfies this burden at step five in one of two ways. *Allsbury*, 460 F. Supp. 2d at 721; *see Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The first way is that the Commissioner can receive testimony from a vocational expert or consider similar vocational resource evidence. *Allsbury*, 460 F. Supp. 2d at 721. The second way is that the "Commissioner can take administrative notice of [the] availability of alternative work by consulting predetermined findings contained in Medical Vocational Guidelines, commonly called 'the grids.'"[4] *Id.*

In determining whether there is other work available that the claimant can perform, the Commissioner may rely exclusively on the grids when the claimant suffers only from exertional impairments or when his non-exertional impairments do not significantly affect his RFC. *See*

---

[4] The grids consist of three tables (for sedentary, light, and medium work) which may be consulted once a claimant's RFC capacity is determined. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201-03. The tables direct conclusions of disability or non-disability based upon claimant's age, education, and previous work experience. *Id.*

*Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Fraga*, 810 F.2d at 1304. However, when the nature of a claimant's impairment is nonexertional, such as when a claimant has certain mental, sensory, or skin impairments or postural and manipulative limitations or environmental restrictions that limits the range of jobs a claimant can perform or a combination of exertional and nonexertional impairments, the ALJ cannot rely on the grids and must rely on vocational expert ("VE") testimony to establish that jobs exist. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994).

At Step Five in this case, the ALJ noted that Lowe was a younger individual between the ages of 18 and 44, had a limited education as he attended school though the 11th grade, and was able to communicate in English. (Tr. 32–33.) The ALJ further stated:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative sedentary occupations such as:
>
> 1) Document Preparer (DOT Code 249.587-018), which is sedentary work with an SVP rating of 2. The vocational expert testified that there are approximately 46,400 such jobs nationally.
>
> 2) Appointment Clerk (DOT Code 237.367-010), which is sedentary work with an SVP rating of 3. The vocational expert testified there are approximately 124,500 such jobs nationally.
>
> 3) Data Entry Clerk (DOT Code 203.582-054), which is sedentary work with an SVP rating of 4. The vocational expert testified that there are approximately 27,500 such jobs nationally.

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational titles (DOT). The DOT does not specifically address reaching in particular directions or reaching unilaterally. As the DOT gives only an overall reaching demand, the vocational expert's testimony is not inconsistent with the DOT and is also reasonable based on the vocational expert's training and experience.
>
> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. As seen above, the vocational expert only identified representative sedentary work in significant numbers in the national economy. Thus, I determined the light occupational base was significantly eroded and applied the framework of Rule 201.25. A finding of "not disabled" is therefore appropriate under the framework of Rule 201.25.

(Tr. 33–34 (footnotes omitted).)

In this case, it is clear that the ALJ made his decision at Step Five based upon the testimony of the VE in finding that there were other jobs that Lowe could perform that existed in significant numbers in the national economy. The ALJ relied on the testimony of the VE, based on the DOT, as is the standard practice, and the VE's testimony provides substantial evidence to support the ALJ's decision at Step Five. Consequently, the ALJ did not err, and remand is not required.

While the Court agrees with Lowe that the DOT has not been updated recently, the Social Security regulations explicitly allow the ALJ to use the DOT. *See*, *e.g.*, 20 C.F.R. § 404.1560(b)(2). "Use of the DOT is widespread in social security cases in all circuits. *Treadaway v. Berryhill*, 4:17-CV-1093, 2018 WL 3862106, at *6 (S.D. Tex. Aug. 13, 2018). Thus, "[w]hether the DOT is outdated is not a determination this Court can make." *Id.*

As to Lowe's argument that the jobs found by the ALJ "require certain levels of schooling and training" and he does not have the ability to perform them, the Court disagrees. The Document

16

Preparer job found by the ALJ has a specific vocational preparation ("SVP")[5] of 2, a reasoning development level ("RDL") of 3,[6] a mathematical development level ("MDL") of 1,[7] and a language development level ("LDL") of 2.[8] DOT, § 249.587-018. In this case, there is nothing in the description of the Document Preparer job that indicates it could not be performed by Lowe. As noted above, the VE was aware of Lowe's age, education level, and prior experience in determining which jobs Lowe could perform.[9] Consequently, the VE's testimony provides

---

[5] SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles* ("DOT")*,* Fourth ed., Revised 1991, Appendix C. The level of time for SVP 2 is "anything beyond short demonstration up to and including 1 month." DOT, Appendix C; *see* SSR 00–4p, 2000 WL189704, at *3.

[6] Jobs with a RDL of three require an employee to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT, Appendix C.

[7] Jobs with a MDL of one require an employee to "[a]dd and subtract two-digit numbers[, m]ultiply and divide 10's and 100's by 2,3,4,5[, p]erform the four basic arithmetic operations with coins as part of a dollar[, and p]erform operations with units such as cup, pint, and quart." DOT, Appendix C.

[8] Jobs with an LDL of 2 require an employee to:

Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.

Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.

Speaking: Speak clearly and distinctly with appropriate pauses and emphasis, correct pronunciation, variations in word order, using present, perfect, and future tenses.

DOT, Appendix C.

[9] The Court notes that the Commissioner's burden at Step 5 of the sequential evaluation process described earlier is satisfied by showing the existence of only *one* job with a significant number of available positions that the claimant can perform. *Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. 2009); *Evans v. Chater,* 55 F.3d 530, 532–33 (10th Cir.1995).

substantial evidence for the ALJ to rely on at Step 5, and, thus, the ALJ did not err in relying on such testimony.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **April 30, 2020** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections

18

are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April _16___, 2020.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv